UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
: 
DAMON C. NAGO, :
:
　　　　　　　　　　Plaintiff, :
:
　　- v - : Case No. 1:19-CV-11483
: (GBD) (OTW)
BLOOMBERG L.P., :
:
:
　　　　　　　　　　Defendant. :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS CERTAIN CLAIMS IN THE AMENDED COMPLAINT PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**


**EPSTEIN BECKER & GREEN, P.C.**
875 Third Avenue
New York, New York 10022
(212) 351-4500
*Attorneys for Defendant*


Firm:50582053

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF THE CASE ............................................................................................ 2

    A.    The Composition of the Enterprise Sales Department ............................ 2

    B.    Failure to be Promoted Between 2006 and 2014 ................................... 3

    C.    Alleged Discrimination Commencing in 2018 ...................................... 4

    D.    Nago's Interest in a Team Leader Position in 2018 ................................ 5

    E.    Nago's Changing Personal Circumstances ............................................ 5

    F.    Black Professional Community Lunch .................................................. 6

    G.    Nago's Performance Issues ................................................................... 7

    H.    Nago files an EEOC Charge Making No Reference to Age or Sex
          Discrimination ..................................................................................... 8

    I.    The Remaining Few Months Before Nago's Resignation ...................... 9

ARGUMENT ...................................................................................................................... 9

   I.   NAGO FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES
      REGARDING HIS SEX DISCRIMINATION CLAIMS UNDER TITLE
      VII AND HIS AGE DISCRIMINATION CLAIMS UNDER THE ADEA
      AND IS THEREFORE PRECLUDED FROM ASSERTING THEM IN
      THIS CASE ........................................................................................... 9

    A.    Applicable Standard ............................................................................. 10

    B.    Nago's Newly Added Sex and Age Discrimination Claims Were
          Not Administratively Exhausted ......................................................... 11

  II.  NAGO'S CLAIMS FOR SEX AND AGE DISCRIMINATION AND A
      VIOLATION OF THE FMLA FAIL FOR THE ADDITIONAL REASON
      THAT THE AMENDED COMPLAINT DOES NOT STATE A
      PLAUSIBLE CLAIM OF DISCRIMINATION ................................... 12

    A.    Applicable Standard ............................................................................. 13

    B.    Nago Fails to Allege Facts Sufficient To State a Claim for Sex
          Discrimination ..................................................................................... 14

    C.    Nago Fails to Allege Facts Sufficient To State A Claim For Age
          Discrimination ..................................................................................... 16

    D.    Nago Fails to Allege Facts Sufficient To State A Claim For A
          Violation Of The Family and Medical Leave Act ................................ 17

**TABLE OF CONTENTS**

*(continued)*

**Page**

III. NAGO'S FAILURE TO PROMOTE CLAIMS ARE TIME BARRED
UNDER THE APPLICABLE LIMITATIONS PERIODS ...............................................19

CONCLUSION..................................................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Airlines, Inc.*,
  239 F.3d 456 (2d Cir. 2001) .................................................................16

*Arnold v. Research Found. for State Univ. of New York*,
  216 F. Supp. 3d 275 (E.D.N.Y. 2016) ...................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................2, 13

*Baroor v. N.Y.C. Dep't of Educ.*,
  362 F. App'x 157 (2d Cir. 2010) ..........................................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................2, 13

*Benson v. Family Dollar Operations, Inc.*,
  755 F. App'x 52 (2d Cir. 2018) ............................................................16

*Boonmalert v. City of New York*,
  721 F. App'x 29 (2d Cir. 2018) ............................................................16

*Brass v. Am. Film Techs., Inc.*,
  987 F.2d 142 (2d Cir. 1993) .................................................................11

*Brown v. Montefiore Med. Ctr.*,
  No. 18-cv-03861 (PGG) (KHP), 2019 WL 4454230, (S.D.N.Y. May 8, 2019),
  *report and recommendation adopted*, 2019 WL 3282927 (S.D.N.Y. July 22,
  2019) ...................................................................................... *passim*

*Chin v. Port Auth. of N.Y. & N.J.*,
  685 F.3d 135 (2d Cir. 2012) .................................................................20

*Dimitracopoulos v. City of New York*,
  26 F. Supp. 3d 200 (E.D.N.Y.2014) ......................................................21

*Fernandez v. Windmill Distrib. Co.*,
  159 F. Supp. 3d 351 (S.D.N.Y. 2016) ...................................................17

*Fort Bend Cty., Tex. v. Davis*,
  139 S. Ct. 1843 (2019) ........................................................................10

*Grant v. Pathmark Stores, Inc.*,
  No. 06 Civ. 5755 (JGK), 2009 WL 2263795 (S.D.N.Y. July 29, 2009) ................10

iii

## TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

**Cases**

*Graziadio v. Culinary Inst. of Am.*,
  817 F.3d 415 (2d Cir. 2016) ................................................. 18

*Gross v. FBL Fin. Servs. Inc.*,
  557 U.S. 167 (2009) .......................................................... 16

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009) .................................................. 13

*Hassan v. NYC Off Track Betting Corp.*,
  No. 05-CIV-9677, 2007 WL 678422 (S.D.N.Y. Mar. 6, 2007) ........... 1, 12

*Hill v. Citibank Corp.*,
  312 F. Supp. 2d 464 (S.D.N.Y. 2004) ....................................... 10

*Johnson v. Andy Frain Servs.*,
  638 F. App'x 68 (2d Cir. 2016) ............................................. 16

*Johnson v. Morrison & Foerster LLP*,
  No. 14-CV-428 (JMF), 2015 WL 845723 (S.D.N.Y. Feb. 26, 2015) ........ 16

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) ............................................. 16, 19

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015) ............................................... 14

*Mabry v. Neighborhood Defender Serv.*,
  769 F. Supp. 2d 381 (S.D.N.Y. 2011) ...................................... 12

*Marcus v. Leviton Mfg. Co.*,
  661 F. App'x 29 (2d Cir. 2016) .......................................... 16, 17

*McGill v. Univ. of Rochester*,
  600 F. App'x 789 (2d Cir. 2015) ........................................... 14

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013) ............................................... 15

*Mohamed v. NYU*,
  No. 14-CV-8373 (GBD) (MHD), 2015 WL 3387218, (S.D.N.Y. May 21,
  2015), *report and recommendation adopted*, 2015 WL 5307391 (S.D.N.Y.
  Sept. 10, 2015) ............................................................. 20

## TABLE OF AUTHORITIES

*(continued)*

**Page(s)**

**Cases**

*Moore v. Verizon*,
   No. 13-civ-6467 (RJS), 2016 WL 825001 (S.D.N.Y. Feb. 5, 2016) ................................13, 17

*Morales v. City of New York Dep't of Juvenile Justice*,
   No. 10-Civ-829 (JGK), 2012 WL 180879 (S.D.N.Y. Jan. 23, 2012) ..............................10, 12

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)..........................................................................................................20

*Ndremizara v. Swiss Re Am. Holding Corp.*,
   93 F. Supp. 3d 301 (S.D.N.Y. 2015)......................................................................................17

*Ortiz v. Standard & Poor's*,
   No. 10 Civ. 8490 (NRB), 2011 WL 4056901 (S.D.N.Y. Aug. 29, 2011) ..............................13

*Pantane v. Clark*,
   508 F.3d 106 (2d Cir. 2007).................................................................................................14

*Payne v. Malemathew*,
   No. 09-CV-1634 CS, 2011 WL 3043920 (S.D.N.Y. July 22, 2011) ......................................13

*Petyan v. N.Y.C. Law Dep't*,
   No. 14 Civ. 1434 (GBD) (JLC), 2015 WL 4104841 (S.D.N.Y. July 2, 2015) ......................11

*Torres v. City of New York*,
   No. 18-3644 (LGS), 2019 WL 1765223 (S.D.N.Y. Apr. 22, 2019) ......................................13

*Vaigasi v. Solow Mgmt. Corp.*,
   No. 11-civ-5088 (RMB) (HBP), 2014 WL 1259616 (S.D.N.Y. Mar. 24, 2014),
   *aff'd*, 750 F. App'x 37 (2d Cir. 2018).............................................................................14, 15

*Williams v. N.Y.C. Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) ..........................................................................................15, 21

*Workneh v. Super Shuttle Int'l, Inc.*,
   No. 15 CIV 3521 (ER), 2017 WL 1185221 (S.D.N.Y. Mar. 28, 2017)..................................18

**Other Authorities**

Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 ........................ *passim*

Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 to 2654.................................. *passim*

Federal Rule of Civil Procedure 12(b)(6) ........................................................................11, 12, 13

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

**Other Authorities**

New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 .................... *passim*

New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 297 ................................. *passim*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ....................... *passim*

## PRELIMINARY STATEMENT

Plaintiff Damon Nago's Amended Complaint alleges that defendant Bloomberg L.P. ("Bloomberg" or the "Company") discriminated against him during his employment because of his race (African American), color (Black), and sex (male) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). (Am. Compl. ¶ III(A), ECF No. 20). Using the court-supplied *pro se* form Employment Discrimination Complaint, Nago also checked the applicable box to assert a claim of discrimination on the basis of age (he was born in 1972 and is therefore over 40 years of age), in violation of the Age Discrimination in Employment Act of 1967, §§ 621 to 634 ("ADEA"). (*Id.*). Specifically, Nago claims that Bloomberg discriminated against him by (1) not promoting him on four occasions between 2006 and 2014; (2) providing him with terms and conditions of employment different from those of similar employees; and (3) retaliating against him for comments he made during a May 2019 affinity group lunch. (*Id.* at ¶ (IV)). He makes the same claims under the New York State Human Rights Law, N.Y. Exec. §§ 290 to 297 ("NYSHRL") and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 131 ("NYCHRL"). (*Id.* at ¶ III(B)). Lastly, Nago checked the box for employment discrimination on the basis of leave for qualified medical or family reasons, in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 to 2654 ("FMLA"). (Am. Compl. ¶ III(A)).

Bloomberg now moves to dismiss Nago's claims for sex and age discrimination and for violation of the FMLA, none of which was included in the original Complaint. Additionally, Bloomberg seeks dismissal of Nago's time-barred failure to promote claims.[1]

---

[1] Bloomberg recognizes that Nago, as a *pro se* plaintiff, must be afforded a more liberal pleading standard. *See Hassan v. NYC Off Track Betting Corp.,* No. 05-CIV-9677, 2007 WL 678422, at *2 (S.D.N.Y. Mar. 6, 2007). Yet, the deficiencies in the Amended Complaint are not technical pleading defects that can be saved by another opportunity to amend the complaint yet again; rather, Nago asserts claims that are procedurally barred or time barred, and fails to allege any facts to support plausible claims of age or sex discrimination or for violation of the FMLA.

As explained below, Nago's claims for sex discrimination under Title VII and age discrimination under the ADEA should be dismissed because he did not include them in the Charge of Discrimination that he filed with the Equal Employment Opportunity Commission ("EEOC"), and therefore failed to administratively exhaust his remedies.  Even if he had included them in his EEOC Charge and they were properly before this Court, they still should be dismissed because he has not pleaded any allegations of sex and age discrimination even remotely sufficient to satisfy the standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The same is true for his sex and age discrimination claims brought under the NYSHRL and the NYCHRL, and his claim for violation of the FMLA; in each instance, he has failed to plead plausible claims.  Finally, Nago's claims for failure to promote based on his race and color during the period between 2006 and 2014 are barred by the applicable limitations periods and should also be dismissed.

## STATEMENT OF THE CASE

After receiving leave to amend his Complaint, Nago filed the Amended Complaint on May 7, 2020.[2]  (ECF No. 20).  According to the Amended Complaint, Bloomberg employed Nago, an African American male born in 1972, as a software sales representative from April 2006 until March 2020, when he resigned to "pursue his [Certified Information Systems Security Professional ("CISSP")] certification and find employment related to that certification."  (Am. Compl. App. A ¶ (22)).

### A.    The Composition of the Enterprise Sales Department

Nago worked in the Company's Enterprise Sales Department, which the Amended Complaint alleges "was run [in October 2019] by a White male, Ian Yeulett."  (Am. Compl. App.

---

[2] Nago filed the original Complaint on December 16, 2019. (ECF No. 2).

Firm:50582053

A ¶ (4)).  The Amended Complaint purports to provide a breakdown by race and sex of various managers in the department at that time, alleging that ten of the eleven Sales Managers were White, one was Asian, and two were women.  (*Id.*).  The Amended Complaint further alleges that of the 93 Sales Team Leaders in the department during the same period, there were two African American women but no African American males.  (*Id.*).  These numbers allegedly show "patterns that did not reflect unbiased recognition of the merits and contributions of the many women and men who worked in the Enterprise Sales Department"; they also allegedly "indicate that as a matter of course, African American men as a group were deprived of more lucrative and rewarding employment opportunities in managerial positions."  (*Id.*).[3]

### B.     Failure to be Promoted Between 2006 and 2014

The Amended Complaint alleges that "[b]etween 2006 and 2014, [Nago] applied for promotion to managerial positions for which he was the best-qualified candidate on four separate occasions, and on each occasion a White male with less applicable experience and inferior qualifications was selected instead."  (Am. Compl. App. A ¶ (5)).  After pleading a few additional allegations regarding these discrete promotion decisions, including blaming "an Italian-American sales manager – M. Cioffi" for the discrimination, the Amended Complaint concedes that because these discrete acts "occurred prior to 2014," they "may not be completely in the scope of this claim because of time limitations for filing."  (*Id.*).

Nago alleges he "filed a formal racial discrimination complaint with the Human Resources department of Bloomberg L.P. in July 2014," but it "was summarily dismissed without

---

[3] The Amended Complaint alleges representative numbers outside Nago's department as well, claiming that the Company's seven-member Management Committee is comprised of seven White individuals, including two women, and that of six department heads, all were male and five of the six were White (one was Asian).  (Am. Compl. App. A ¶ (4)).

Firm:50582053

explanation" following "an insufficient investigation." (Am. Compl. App. A ¶ (6)). *The Amended Complaint makes no specific allegations of discriminatory treatment for about the next four years.*

### C.   Alleged Discrimination Commencing in 2018

According to the Amended Complaint, Bloomberg subjected Nago to "disparate treatment and adverse employment action in violation of 42 U.S.C. 2000e-2 and 42 U.S.C. 2000e-3 *starting in 2018*." (Am. Compl. App. A ¶ (7)) (emphasis added). Specifically, beginning in March 2018, Nago alleges that he "was subjected to conditions of employment that were different than comparable employees in his business unit and not in compliance with stated policy in [his] business unit – Electronic Trading Systems (ETS)." (Am. Compl. App. A ¶ (8)). While "ETS policy had been established in the first quarter of 2018 which relieved ETS sales reps from the heavy and unpopular burden of selling and supporting software applications across multiple financial asset classes (stocks, bonds and currency) simultaneously," Nago "was made to continue with his existing client coverage responsibilities in all asset classes despite complaining about this disparate treatment and the difficulty it imposed throughout 2019 to his current manager." (*Id.*). Nago does not plead, however, the supposed basis for the alleged discrimination. (*Id.*).

The Amended Complaint further alleges that "[b]etween January 2018 and March 2020, [Nago] was assigned client coverage responsibilities that far exceeded the average of his ETS peers in terms of the number of client accounts for which he was responsible." (Am. Compl. App. A ¶ (9)). "The number of accounts covered by [Nago] was the fourth highest in the ETS group, exceeded only by the one Asian American rep in ETS . . . who covered the most accounts in the group at 3,629; an African American woman . . . who covered 3,591 accounts and . . . a White man, who covered 2,781 client accounts." (*Id.*). The Amended Complaint adds that "[o]f the 44 sales reps in the ETS business unit, five were visible minorities protected by Title VII, and three of those five were in the top four when it came to the number of clients they were asked to support."

(*Id.*).  Again, Nago does not plead the basis of alleged discrimination, but he apparently concedes that no basis exists, as he acknowledges that he was treated better than African American, White and female comparators.  (*Id.*).

> ### D.   Nago's Interest in a Team Leader Position in 2018

In September 2018, "a sales rep on a different team within the ETS business group . . . resigned from the company."  (Am. Compl. App. A ¶ (10)).  At that time, Nago "learned from another sales rep in the group" that the sales rep who resigned "had been given a special arrangement which exempted her from travel requirements that all other reps in the department, including [Nago], faced."  (*Id.*).  Additionally, at that time, "the ETS managers were already aware that, because of health issues that his daughter was experiencing, [Nago] was not in a position to travel unless absolutely necessary."  (*Id.*).  As a result, Nago "approached" the resigning employee's Team Leader and "explained that he would like to take over her client account responsibilities."  (*Id.*).  But Bloomberg instead selected "an inexperienced young employee . . . from the client help desk who had never executed a sales role before and who had never worked for any client using the ETS software applications."  (Am. Compl. App. A ¶ (11)).  The Amended Complaint alleges that Nago "was clearly and obviously more qualified than this young employee" for the vacant position.  (*Id.*).  The Amended Complaint speculates that this employment action "may have violated 29 U.S.C. 621 through 634, which bars employment discrimination on the basis of age."  (*Id.*).

> ### E.   Nago's Changing Personal Circumstances

In November 2018, Nago "approached the ETS Sales Manager, [Hank] Anderson, and told Mr. Anderson that, as a result of imminently changing family circumstances because of [his] divorce, he needed more flexibility to work from home."  (Am. Compl. App. A ¶ (12)).  Bloomberg "had, at the time, a Flexible Work Arrangement policy," and Anderson "informed [Nago] that the

5

Flexible Work Arrangement policy is applied differently and selectively across the company as determined by and at the discretion of individual managers." (*Id.*).  Anderson further advised Nago that "he would do his best to help," and "ultimately offered [Nago] an official Flexible Work Arrangement of one day per week working from home," which Nago surmises "may have violated 29 U.S.C. 2601 through 2654." (*Id.*).

F.     **Black Professional Community Lunch**

On March 28, 2019, Nago and "seven other African American employees" were invited to a lunch with Yeulett, arranged "on behalf of the Black Professional Community (one of several sanctioned 'employee communities' designed to promote diversity initiatives at [the Company])." (Am. Compl. App. A ¶ (13)).  One of the attendees explained that Nago and the other attendees "were selected because they represented virtually all of the long-tenured African American employees in an Enterprise Sales Department consisting of close to one thousand employees." (*Id.*).

During the lunch, which occurred on May 1, 2019, "the same complaints that [Nago] had alleged in his 2014 discrimination complaint to the Human Resources department were asserted again by [Nago] and by the other African American sales reps" in attendance.  (Am. Compl. App. A ¶ (14)).  According to the Amended Complaint, "those complaints were (1) that African Americans were rarely promoted in the Enterprise Sales department while White employees were promoted more often and more rapidly; and (2) that the promotion process lacked transparency leaving African American employees puzzled about the criteria, methods and rational used to determine employee promotions." (*Id.*).

The Amended Complaint alleges that Yeulett "acknowledged" during the lunch that Bloomberg's "management committee recognized that it had a problem retaining African American talent and declared that they were committed to the promotion of diversity." (Am.

Compl. App. A ¶ (15)).  Yeulett allegedly "admitted that it was his practice to personally invite individuals that he knew personally and thought well of to apply for certain leadership positions." (*Id.*).   In doing so, Yeulett "was highlighting a common practice at [the Company] where sometimes individuals were simply appointed to leadership positions and at other times positions were unofficially reserved for someone hand-picked but still posted as open for applications as a mere procedural formality."  (*Id.*).

According to the Amended Complaint, "[t]he actions Bloomberg managers took *after* the May 1, 2019 lunch [also] violated 42 U.S.C. 2000e-2 and 42 U.S.C. 2000e-3."  (Am. Compl. App. A ¶ (23)) (emphasis added).

### G.   Nago's Performance Issues

On May 30, 2019, Anderson informed Nago "that his job performance was not up to standard."  (Am. Compl. App. A ¶ (16)).   According to the Amended Complaint, Anderson "implied" that "he thought that [Nago] was lazy," and he "suggested to [Nago] that he look for another job."  (*Id.*).  Nago "replied that he had worked as hard or harder than other reps in the department but simply had not had the ability to travel for unneeded meetings."  (*Id.*).  Anderson explained "that the other reps had dramatically increased their travel and meeting volumes as [he] had expressly asked them to do, while [Nago] had stayed close to prior levels."  (*Id.*).  Nago "felt unfairly maligned and threatened" by Anderson.  (*Id.*).

Soon thereafter, Nago decided to seek "a position outside of the Enterprise Sales department" and explained "that he had an interest in information security (infosec) policy," adding "that he had decided to pursue a CISSP certification – an industry standard for the infosec field."  (Am. Compl. App. A ¶ (17)).  He asked for his Team Leader's and Anderson's help "transitioning to a role at [the Company] that aligned with this industry certification."  (*Id.*). Anderson replied that Nago "could count on their support."  (*Id.*).

Firm:50582053

On June 20, 2019, Nago "applied for an open position at Bloomberg in its Vendor Information Risk Management group (Job Req. No. 75643)." (Am. Compl. App. A ¶ (18)). He "was denied an opportunity to interview for the position." (*Id.*). While acknowledging that he "did not have the requisite experience for this position," Nago alleges that other employees "were able to transfer into similar roles with zero prior knowledge or experience." (*Id.*). The Amended Complaint alleges that another employee "transferred into this department some time in 2018 with no prior experience relevant to her new position." (*Id.*).

On July 3, 2019, Bloomberg placed Nago "on a formal Performance Improvement Plan (PIP)." (Am. Compl. App. A ¶ (19)). According to the Amended Complaint, placing Nago on the PIP "facilitated the process that was commonly known as 'managing out' unwanted employees and this action . . . effectively ended any chance [Nago] had to secure a more advantageous position at [the Company] in the Vendor Information Risk Management Group or in any CISSP-related group in the near future." (*Id.*).

### H.     Nago files an EEOC Charge Making No Reference to Age or Sex Discrimination

On July 19, 2019, Nago filed a Charge of Discrimination with the EEOC. The Charge, attached as Appendix B to the Amended Complaint, contains only the following allegations:

> In 2014, I filed a complaint with HR after I had 3 times applied for a Team Leader position in the Sellside Equity Order Management Systems (SSEOMS) group in which I worked at that time and had 3 times seen the position given to Italian-American men … by an Italian-American hiring manager….
>
> HR dismissed my complaint – finding no cause – after some sort of investigation about which they revealed nothing.
>
> On May 1, 2019 I attended an invitation-only lunch with Ian Yeulett, Global Head of Sales for Bloomberg and seven other African-American employees with at least 10 years at the company. The event was engineered by the Black Professional Community. During that lunch, all eight African Americans in that room

complained that the company unfairly discriminates and provides no transparency in the internal promotion process.  Two of the eight African Americans in the room that day are no longer with the company…. And I was recently told by Hank Anderson to look for another job and to expect to be put on a Performance Improvement Plan.  It feels like retaliation for speaking up during that lunch.[4]

## I.     The Remaining Few Months Before Nago's Resignation

On August 5, 2019, Nago "received his first and only negative Performance Evaluation in more than thirteen years of employment."  (Am. Compl. App. A ¶ (21)).  Although the Amended Complaint earlier alleged that Nago had been placed on a PIP in July, it also alleges that he "was officially placed on a Performance Improvement Plan" a month later.  (*See* Am. Compl. App. A ¶¶ 19, 21).

The Amended Complaint contains no further allegations about Nago's performance issues or alleged adverse actions for the duration of his employment.  Rather, it alleges that "[o]n or about December 2, 2019 [Nago] took a medical leave of absence and [he] resigned his position with Bloomberg on March 2, 2020 to pursue his CISSP certification and find employment related to that certification."  (Am. Compl. App. A ¶ (22)).

## ARGUMENT

## I.     NAGO FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES REGARDING HIS SEX DISCRIMINATION CLAIMS UNDER TITLE VII AND HIS AGE DISCRIMINATION CLAIMS UNDER THE ADEA AND IS THEREFORE PRECLUDED FROM ASSERTING THEM IN THIS CASE

Nago has included claims in the Amended Complaint that were not properly exhausted, as required, before the EEOC, including his claims of sex discrimination under Title VII and his claims of age discrimination under the ADEA.  As such, these causes of action are barred by Nago's failure to exhaust the required administrative remedies as to those claims before the EEOC.

---

[4] The EEOC issued a Notice of Right to Sue on October 10, 2019, which is attached to the Amended Complaint.  Nago received it on October 11, 2019.  (Am. Compl. ¶ V).

Firm:50582053

## A.   <u>Applicable Standard</u>

In order to file a Title VII or ADEA claim in federal court, a plaintiff must first exhaust his administrative remedies by timely filing a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act.  *See* 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d); *see also Fort Bend Cty., Tex. v. Davis,* 139 S. Ct. 1843, 1846 (2019).  This 300-day deadline operates as a statute of limitations; any claims that are not timely filed will be barred.  *See Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 472 (S.D.N.Y. 2004).  This bar applies equally to *pro se* litigants.  *Grant v. Pathmark Stores, Inc.*, No. 06 Civ. 5755 (JGK), 2009 WL 2263795, at *7 (S.D.N.Y. July 29, 2009) ("Title VII time limitations are not extended for *pro se* litigants.") (citations omitted).

The requirement to administratively exhaust claims is set forth in the court-supplied complaint form used by Nago:

> For most claims under the federal discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

(Am. Compl. ¶ V).  As such, courts regularly dismiss claims for failing to exhaust administrative remedies as required.  *See, e.g., Brown v. Montefiore Med. Ctr.,* No. 18-cv-03861 (PGG) (KHP), 2019 WL 4454230, at *5 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, 2019 WL 3282927 (S.D.N.Y. July 22, 2019) (dismissing Title VII claim as barred for failure to timely exhaust before the EEOC); *Morales v. City of New York Dep't of Juvenile Justice*, No. 10-Civ-829 (JGK), 2012 WL 180879, at *3-4 (S.D.N.Y. Jan. 23, 2012) (dismissing the *pro se* plaintiff's age, sex and disability discrimination claims with prejudice because she failed to properly exhaust her administrative remedies).

### B.     Nago's Newly Added Sex and Age Discrimination Claims Were Not Administratively Exhausted

In his EEOC Charge (No. 520-2019-04885), Nago only raised claims of discrimination on the basis of race and color and retaliation.[5]  Because Nago's purported sex and age discrimination claims are being raised for the first time now – and were never raised with the EEOC – they cannot proceed.[6]  *See Arnold v. Research Found. for State Univ. of New York*, 216 F. Supp. 3d 275, 287 (E.D.N.Y. 2016) (dismissing Title VII and ADEA claims where administrative remedies had not been exhausted and denying the plaintiff's motion to amend to add claims as futile).

While courts may allow for certain "reasonably related" claims to be asserted even if they were not raised with the EEOC, absolutely no basis exists to find that here.  A claim is considered "reasonably related" only if (1) "the conduct complained of would fall within the scope of the EEOC investigation [and] . . . can reasonably be expected to grow out of the charge of discrimination"; (2) the claim involves one alleging retaliation by an employer against an employee for filing an EEOC charge; and (3) the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Petyan v. N.Y.C. Law Dep't*, No. 14 Civ. 1434 (GBD) (JLC), 2015 WL 4104841, at *2-3 (S.D.N.Y. July 2, 2015) (internal quotation marks and citations omitted).  Nago pleads no alleged facts to support his sex and age discrimination claims, and they have no relationship to any allegation made before

---

[5] A complete copy of Nago's EEOC Charge, obtained from the EEOC by a FOIA request, is attached as Exhibit A to the accompanying Declaration of David W. Garland ("Garland Declaration").  When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court's review is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit.  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  Thus, the Court may consider this complete copy of Nago's EEOC Charge as it is incorporated by reference in the Amended Complaint and Nago relied on it when bringing this suit.  The Charge makes clear that Nago only complained to the EEOC about discrimination on the basis of "race" and "color" and retaliation.  (*See* Garland Decl. Ex A at 1).

[6] As noted above, the age and sex discrimination claims were not included in the original Complaint either.

the EEOC.  Therefore, Nago cannot plausibly assert that these new claims are "reasonably related" to the claims he filed with the EEOC.

Further, nothing in the Amended Complaint supports the notion that the types of discrimination now "checked off" (none of which is supported by sufficient factual assertions) would have fallen within the scope of the EEOC investigation and could reasonably be expected to grow out of the EEOC Charge.  Courts routinely find that sex and age discrimination claims are *not* reasonably related to race claims and dismiss later asserted claims as a result.  *See, e.g., Morales*, 2012 WL 180879, at *4 (dismissing *pro se* plaintiff's age and sex discrimination claims because they were not reasonably related to claims based on race, national origin, and retaliation); *Hassan*, 2007 WL 678422, at *3 (dismissing *pro se* plaintiff's ADEA claims that were not reasonably related to Title VII claims in his EEOC charge).

Accordingly, Nago's Title VII claim for discrimination based on sex and his ADEA claim for discrimination based on age should be dismissed because he did not include any such claims in his EEOC Charge.

## II.    NAGO'S CLAIMS FOR SEX AND AGE DISCRIMINATION AND A VIOLATION OF THE FMLA FAIL FOR THE ADDITIONAL REASON THAT THE AMENDED COMPLAINT DOES NOT STATE A PLAUSIBLE CLAIM OF DISCRIMINATION

Even if Nago had included his claims for sex and age discrimination in his EEOC Charge and they were properly before this Court, those claims nevertheless fail because Nago has not set forth sufficient factual allegations tying any alleged adverse action by Bloomberg to his sex or age. *See, e.g., Mabry v. Neighborhood Defender Serv*., 769 F. Supp. 2d 381, 392 (S.D.N.Y. 2011) (dismissing *pro se* plaintiff's complaint, stating that "to overcome a Rule 12(b)(6) motion to dismiss in an employment discrimination case, a complaint must give fair notice of the basis of plaintiff's claims and the claims must be facially plausible.").  Nago has similarly failed to plead sufficient facts to raise plausible sex and age discrimination claims under state and city law and a

claim for violation of the FMLA.  *See e.g., Ortiz v. Standard & Poor's*, No. 10 Civ. 8490 (NRB), 2011 WL 4056901, at *3-4 (S.D.N.Y. Aug. 29, 2011) (dismissing employment discrimination claims because the *pro se* plaintiff did not demonstrate any "facially plausible" nexus between his protected characteristics and any adverse action); *Payne v. Malemathew*, No. 09-CV-1634 CS, 2011 WL 3043920, at *2, 5-6 (S.D.N.Y. July 22, 2011) (dismissing *pro se* plaintiff's conclusory age discrimination claims and denying leave to amend).

### A.   <u>Applicable Standard</u>

For claims to survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), they "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Such factual allegations must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  "[L]abels and conclusions," and "a formulaic recitation of the elements of a cause of action," will not suffice.  *Id.* (citations omitted).  Discrimination claims which fail to sufficiently allege facts to state a claim are routinely dismissed.  *See, e.g., Torres v. City of New York*, No. 18-3644 (LGS), 2019 WL 1765223, at *2-5 (S.D.N.Y. Apr. 22, 2019) (dismissing the plaintiff's Title VII, NYSHRL and NYCHRL claims where *pro se* plaintiff failed to aver sufficient factual support); *Moore v. Verizon*, No. 13-civ-6467 (RJS), 2016 WL 825001, at *15 (S.D.N.Y. Feb. 5, 2016) (dismissing the *pro se* plaintiff's Title VII, ADA, ADEA, NYSHRL, NYCHRL claims for failure to plead facts stating a claim).

Although courts liberally construe their pleadings, *pro se* plaintiffs must still assert sufficient factual allegations to meet the plausibility standard.  *See, e.g., Harris v. Mills*, 572 F.3d 66, 68 (2d Cir. 2009) (dismissing *pro se* plaintiff's claims as "legally insufficient, even when read with the lenity that must attend the review of *pro se* pleadings.").  In other words, "[a]lthough courts are required to liberally construe a *pro se* plaintiff's claims, '[p]ro se* status does not . . .

Firm:50582053

excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure.'" *Brown*, 2019 WL 4454230, at \*4 (quoting *Jenkins v. N.Y. City Dep't of Educ.*, No. 10 CV 6159 (BSJ) (THK), 2011 WL 5451711, at \*3 (S.D.N.Y. Nov. 9, 2011), *aff'd*, 508 F. App'x 66 (2d Cir. 2013)).

### B.   Nago Fails to Allege Facts Sufficient To State a Claim for Sex Discrimination

To establish a claim for sex discrimination under either Title VII or the NYSHRL, a plaintiff must show that he is (1) a member of a protected class, (2) qualified for his position, (3) suffered an adverse employment action, and (4) such adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015) (holding that the standard for analyzing discrimination claims under Title VII and the NYSHRL is the same).  Nago fails to plead sufficient facts to state such a claim under either statute.

Nago's Title VII and NYSHRL sex discrimination claims should be dismissed because the Amended Complaint does not contain any allegations from which this Court could draw a plausible inference that Nago suffered discrimination because of his sex.  *Pantane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007) ("The *sine qua non* of a gender-based discriminatory action claim under Title VII is that 'the discrimination must be *because of* sex.'" (quoting *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 189 (2d Cir. 2001)) (emphasis in original); *Vaigasi v. Solow Mgmt. Corp.*, No. 11-civ-5088 (RMB) (HBP), 2014 WL 1259616, at \*10-11 (S.D.N.Y. Mar. 24, 2014), *aff'd*, 750 F. App'x 37 (2d Cir. 2018) (dismissing *pro se* male plaintiff's sex discrimination claim under Title VII, NYSHRL, and NYCHRL because he "does not allege facts that suggest that [his] gender was a basis for Defendants' adverse actions, nor does [he] set forth any factual circumstances from which [such discrimination] might be inferred.") (internal quotation marks and citations omitted). The Amended Complaint fails to plead critical elements of a viable sex discrimination claim,

14

including any alleged adverse action taken by Bloomberg because of his sex.  Nago's claim of sex discrimination consists of nothing more than checking a box in his form complaint, and he simply does not plead any allegations in support of a plausible claim that Bloomberg discriminated against him on the basis of his sex.

Nago's claim is equally deficient under the NYCHRL.  To plead a claim of sex discrimination under the NYCHRL, a plaintiff must allege facts showing that he was "treated less well than other employees because of" his sex.  *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009).[7]  Nago's Amended Complaint contains no allegations that Bloomberg treated him less well because of his sex or as compared to female employees.  While Nago mentions female employees in the Amended Complaint (e.g., the number of women compared to the number of men in certain roles), he does not plead any facts suggesting that these female employees received superior treatment because of their sex, nor does he set forth any other factual support for a sex discrimination claim under the NYCHRL.[8]  Accordingly, as with his federal and state law claims, Nago's NYCHRL sex discrimination claim fails because he sets forth no factual allegations supporting a claim that he was treated "less well" by Bloomberg because of his sex.  *See Vaigasi*, 2014 WL 1259616, at *10 (dismissing *pro se* plaintiff's sex discrimination claims under Title VII, NYSHRL, and NYCHRL for failure to set forth any facts supporting such claims).

---

[7] Claims under the NYCHRL are considered separately from state and federal claims.  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

[8] Nago alleges that, in June 2019, he was "denied an opportunity to interview for a position" for which he had no experience, despite "knowledge that other employees," such as one female employee in 2018, "were able to transfer into similar roles with zero prior knowledge or experience."  (Am. Compl. App. A ¶ (18)).  To the extent Nago relies on this allegation to support a sex discrimination claim, it is wholly insufficient.  Nago does not plead that he was qualified for the position, whether the position was filled or by whom, or whether any denial of the position was because Nago is a man, not a woman.  As such, he has not alleged any adverse action giving rise to an inference of sex discrimination.  *See Brown*, 2019 WL 4454230, at *4-5.

Firm:50582053

### C.   **Nago Fails to Allege Facts Sufficient to State a Claim for Age Discrimination**

Under the ADEA and the NYSHRL, to make out a *prima face* case of age discrimination, a plaintiff must demonstrate membership in a protected class, qualification for the position, an adverse employment action, and circumstances supporting an inference of age discrimination. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).[9]   Moreover, the U.S. Supreme Court has held that the plaintiff must plausibly plead facts to suggest that age was the "'but-for' cause of the challenged adverse employment action."   *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 180 (2009); *Benson v. Family Dollar Operations, Inc.*, 755 F. App'x 52, 55 (2d Cir. 2018).   While NYCHRL claims are analyzed separately, a plaintiff must still adequately plead facts evidencing differential treatment based on age.   *See Boonmalert v. City of New York*, 721 F. App'x 29, 32-33 (2d Cir. 2018); *Johnson v. Andy Frain Servs.*, 638 F. App'x 68, 71 (2d Cir. 2016).

Here, Nago has pleaded membership in a protected class (over age 40), but that alone is insufficient to avert dismissal of an age discrimination claim.   *See Johnson v. Morrison & Foerster LLP*, No. 14-CV-428 (JMF), 2015 WL 845723, at *6 (S.D.N.Y. Feb. 26, 2015) (dismissing ADEA, NYSHRL, and NYCHRL age discrimination claims where the plaintiff only alleged membership in protected group, as that "is plainly insufficient by itself to support an inference of discrimination *because of* [that] protected characteristic") (emphasis added; citation omitted).   Since he has *not* alleged that his age was the 'but-for' cause of any adverse employment action against him or that any differential treatment was based on age, the age claims should be dismissed for that reason as well.   *See Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 32-33 (2d Cir. 2016) (dismissing ADEA

---

[9] Age discrimination claims brought under the ADEA and the NYSHRL are governed by the same standards and evaluated using the same analytical framework.   *See Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

and NYSHRL age discrimination claims where the amended complaint alleged "no facts that would support an inference that [the adverse] decision was made because of age.").

While Nago has pleaded a single instance where "an inexperienced young employee" allegedly received a position without travel while he did not (Am. Comp. App. A ¶ 11), he only speculates that the reason may have been age, alleging that this employment action "*may have* violated [the ADEA]." (*Id.*) (emphasis added). Such a conclusory and speculative allegation is insufficient to state an age discrimination claim under the ADEA, the NYSHRL and the NYCHRL. *See Marcus*, 661 F. App'x 29 at 32-33 (finding the "mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive" and dismissing the plaintiff's ADEA and NYSHRL age discrimination claims); *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 318 (S.D.N.Y. 2015) (dismissing the plaintiff's ADEA and NYSHRL age discrimination claims where the plaintiff failed to plausibly plead that the defendant hired "younger and/or less qualified applicants instead of him"); *Moore,* 2016 WL 825001, at *13-14 (dismissing the *pro se* plaintiff's ADEA, NYSHRL, and NYCHRL age discrimination claims where the plaintiff's conclusory and tenuous allegations failed to support any inference of age discrimination).   As such, Nago has failed to plead sufficient facts to state claims of age discrimination under the ADEA, the NYSHRL, and the NYCHRL, and these claims should be dismissed.

### D.   Nago Fails to Allege Facts Sufficient to State a Claim for a Violation of the Family and Medical Leave Act

To state a claim of interference under the FMLA, a plaintiff must plead sufficient facts to establish that his employer interfered with his right to take a federally protected leave of absence. *Fernandez v. Windmill Distrib. Co*., 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016) (dismissing FMLA interference claim where plaintiff failed to plead facts sufficient to state a claim).  For a *prima*

17

*facie* case of FMLA interference under 29 U.S.C. § 2615(a)(1), a plaintiff must adequately plead five elements: (1) "that [he] is an eligible employee under the FMLA;" (2) "that defendant is an employer as defined by the FMLA;" (3) "that [he] was entitled to take leave under the FMLA;" (4) "that [he] gave notice to the defendant of [his] intention to take leave;" and (5) "that [he] was denied benefits to which [he] was entitled under FMLA." *Graziadio v. Culinary Inst. of Am.,* 817 F.3d 415, 424 (2d Cir. 2016); *Workneh v. Super Shuttle Int'l, Inc.*, No. 15 CIV 3521 (ER), 2017 WL 1185221, at *6 (S.D.N.Y. Mar. 28, 2017) (dismissing the plaintiff's FMLA interference claim where elements were not pleaded with specificity).

Once again, Nago merely checks the box for an "FMLA" claim on his Amended Complaint and alleges no facts demonstrating that he was eligible for or entitled to leave, that he gave notice to Bloomberg of the need for such leave, or that any request for leave was denied by Bloomberg. *See Brown*, 2019 WL 4454230, at *10 (dismissing plaintiff's FMLA interference claim because she failed to set forth facts from which the Court could find she was eligible for leave, told her employer of intent to take such leave, or that she was denied FMLA leave). As an initial matter, Nago does not allege that he sought a protected leave of absence under the FMLA. Rather, Nago alleges generally that, in November 2018, he requested "more flexibility to work from home" due to "changing family circumstances because of [his] divorce" – and was ultimately offered to work from home one day per week. (Am. Compl. App. A ¶ (12)).[10]  Nago asserts this employment action "*may have* violated [the FMLA]." (*Id.*) (emphasis added). The Amended Complaint fails to set forth any facts on which to ascertain whether this flexible time request would have even

---

[10] In an earlier allegation (Am. Compl. App. A ¶ (10)), Nago pleaded that his daughter was experiencing "health issues," yet he does not allege that he sought a leave of absence for this reason. (*See* Am. Compl. App. A ¶ (10)). Moreover, even if Nago had pleaded that he sought leave in connection with his daughter's health issues, he has not alleged that any such leave would have qualified as FMLA leave, that he provided notice of intent to take FMLA leave on this basis, or that he was denied such leave. *See Brown*, 2019 WL 4454230 at *10 (finding *pro se* plaintiff's allegations that the defendant threatened to terminate her employment for taking off work to care for her son with asthma were insufficient to state a claim of FMLA interference).

Firm:50582053

qualified for FMLA leave, or that Nago requested and was denied FMLA leave.  *See Brown*, 2019 WL 4454230, at *10.

Because Nago has not pleaded any of the requisite elements, he has failed to state a claim for FMLA interference, and that claim should be dismissed.

## III.   NAGO'S FAILURE TO PROMOTE CLAIMS ARE TIME BARRED UNDER THE APPLICABLE LIMITATIONS PERIODS

In order to timely assert claims under Title VII, a plaintiff must include them in a charge filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e); *Baroor v. N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010). Failure to file a timely charge precludes a plaintiff from bringing Title VII claims.  *See id.*, 362 F. App'x at 159-60.  As for discrimination claims under the NYSHRL and the NYCHRL, they are time-barred unless filed within three years of the alleged discriminatory acts.  *Kassner*, 496 F.3d at 238.

Here, Nago filed his EEOC charge on July 19, 2019, and received his Notice of Right to Sue on October 11, 2019.  (*See* Am. Compl. ¶ V and App. B).  He commenced this action on December 16, 2019.  (Compl., ECF No. 2).  Accordingly, under Title VII, any allegations of discrimination occurring before September 20, 2018 (300 days before Nago filed his EEOC Charge) are time barred.  Under the NYSHRL and the NYCHRL, any allegations of discrimination occurring before December 16, 2016 (three years before Nago commenced this action) are time barred.  Thus, Nago's failure to promote claims – occurring "[b]etween 2006 and 2014" (Am. Compl. ¶ IV(A), App. A ¶ (5)) – are well outside of the statutory time limitations under Title VII, the NYSHRL, and the NYCHRL.

While Nago acknowledges in the Amended Complaint that his failure to promote claims "may not be completely in the scope of this [complaint] because of time limitations for filing," he

alleges that any failure to promote "reflects general patterns of discrimination in the workplace." (Am. Compl. App. A ¶ (5)).  The U.S. Supreme Court has held, however, that any failure to promote under Title VII is a "discrete act" that is "not actionable if time barred, even when [it is] related to acts alleged in timely filed charges."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  As the Supreme Court has explained, each discrete act – including a failure to promote – "starts a new clock for filing charges alleging that act."  *Id.*; *see also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 158-59 (2d Cir. 2012) (finding that "failure-to-promote" claims occurring outside of the limitations period were time barred and could not be saved by the continuing violation doctrine).[11]

The standards governing the limitations defense and the applicability of the continuing violations doctrine under the NYSHRL are parallel to those under Title VII; thus, untimely failure to promote claims under both Title VII and NYSHRL should be dismissed for the same reasons. *See Mohamed,* 2015 WL 3387218, at *18 (citations omitted).  As for the NYCHRL analysis, it differs slightly and allows for discrete acts to be considered timely "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory practice or policy."  *Id.* (citing *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y.2014)) (internal quotation marks omitted).  Nonetheless, even under the NYCHRL standard, Nago's failure-to-promote claims must be "'connected to claims of actionable conduct that occurred during the limitations period.'"  *Mohamed*, 2015 WL 3387218, at *20 (citation omitted) (dismissing *pro se* plaintiff's failure to promote claims under the

---

[11] In *Mohamed v. NYU*, this Court adopted the Magistrate Judge's Report and Recommendation which followed *Morgan* and rejected the plaintiff's attempt to tie his untimely failure-to-promote claim to a "pattern" of "retaliation" and "harassment" in his workplace, finding that allegations of "'separate instances of alleged unlawful conduct, occurring at different times and under different circumstances'" were insufficient to invoke the continuing violation doctrine.  No. 14-CV-8373 (GBD) (MHD), 2015 WL 3387218, at *16 (S.D.N.Y. May 21, 2015), *report and recommendation adopted*, 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015) (dismissing *pro se* complaint alleging untimely failure to promote claims under the ADEA, NYSHRL, and NYCHRL).

NYCHRL that were "well outside the limitations period" and insufficiently pled); *Williams*, 61 A.D.3d at 80-81 (affirming dismissal of untimely NYCHRL claims without "connection to actionable conduct within the limitations period.").   Further, the presence of a lengthy gap in time and conduct by different actors also cuts against the applicability of the continuing violations doctrine under the NYCHRL.  *See Dimitracopoulos*, 26 F. Supp. 3d at 212-13 (dismissing time-barred claims under the ADEA, NYSHRL, and "even under NYCHRL's more lenient" standard where plaintiff's years' old performance review rating, from a different supervisor, did not suggest a continuing policy of discrimination).

Here, Nago does not sufficiently allege facts setting forth a connection to actionable conduct within the limitations period.   Indeed, he pleads *a four-year gap* between allegedly discriminatory acts (the last failure to promote claim based on *race* in 2014, and alleged *age* discrimination in 2018).   Moreover, Nago attributes a discriminatory motive to *different managers* in 2014 and 2018.   (*See* Am. Compl. App. A. ¶¶ (5) and (10)-(11)).   Thus, Nago's failure to promote claims during the period between 2006 and 2014 are also not actionable under the NYCHRL.

As such, Nago's discrete failure to promote claims under Title VII, the NYSHRL, and the NYCHRL – occurring "[b]etween 2006 and 2014" – should be dismissed as untimely.

## CONCLUSION

For the foregoing reasons, Bloomberg submits that the Court should dismiss with prejudice Nago's claims of (1) sex discrimination under Title VII, the NYSHRL and the NYCHRL; (2) age discrimination under the ADEA, the NYSHRL and the NYCHRL; and (3) failure to promote based on race or color under Title VII, the NYSHRL and the NYCHRL.   The Court should also dismiss Nago's claim of FMLA interference.   Accordingly, only the following claims should go forward: (1) discrimination based on race and color under Title VII, the NYSHRL, and the NYCHRL (on

Firm:50582053

the basis that Bloomberg allegedly provided Nago with terms and conditions of employment different from those of similarly situated employees); and (2) retaliation under Title VII, the NYSHRL, and the NYCHRL (allegedly denying him an opportunity to interview for a position in the Vendor Information Risk Management group, giving him a subpar performance review, and placing him on a Performance Improvement Plan because of his alleged protected activity in May 2019).

Dated:  May 21, 2020

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:     *s/ David W. Garland*
       David W. Garland, Esq.
       875 Third Avenue
       New York, New York  10022
       (212) 351-4500
       DGarland@ebglaw.com
       *Attorneys for Defendant*

Firm:50582053